CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 0 2 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| ROBERT CLARK,<br><br>*Plaintiff,*<br><br>v.<br><br>DENNIS G. SIMMS, *and*<br>MILDRED A. SIMMS,<br><br>*Defendants.* | CIVIL NO. 3:09CV00002<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

On January 16, 2009, Plaintiff Robert Clark filed suit against Defendants Dennis and Mildred Simms under the Americans with Disabilities Act ("ADA"), alleging the existence of certain architectural barriers to access on the Defendants' property. This matter is before the Court on the Defendants' Motion for Summary Judgment (docket no. 12).[1] Because the exhibits before the Court demonstrate that there is a genuine issue of material fact as to whether the alleged barriers on the Defendants' property violate the ADA, the Defendant's Motion will be denied in a separate Order to follow.

## I. BACKGROUND

The Defendants are co-owners of a building and surrounding property located at 3345 Broad Street Road in Gum Spring, Virginia. The building is currently leased to two other individuals who operate a hunting store called the "Hunt 'N' Shack." Plaintiff is a quadriplegic and uses a power wheelchair for mobility. He is also an avid sportsmen and an active member of "Wheelin' Sportsmen." On September 5, 2008, Plaintiff and a couple of friends stopped at the

---

[1] The Defendants failed to file a reply brief within the deadline set forth by the Pretrial Order, and the last brief on this matter was filed on March 18, 2009. Because none of the parties contacted the Court to schedule a hearing within the deadline established by the Pretrial Order and because the facts and legal contentions are adequately

Hunt "N" Shack on their way to a nearby dove hunt in Louisa County. Plaintiff claims that when he arrived at the store, it was clear that he could not enter through the front entrance with his wheelchair and there were no signs indicating the availability of handicap access elsewhere. He claims that his friends spotted another individual in a manual wheelchair being carried up a one-foot tall step at the rear entrance of the Hunt "N" Shack but he could not be carried up the step because his power wheelchair was too heavy. Although the Defendants claim that a portable wheelchair ramp was available at the rear of the building, Plaintiff claims that he never observed such a ramp when he was at the rear of the store and was never offered the use of a portable ramp during his visit.

After Plaintiff's experience at the Hunt "N" Shack, his attorney sent the Defendants a letter informing them of alleged violations of the ADA on their property. The letter warned the Defendants that if they did not sign a certificate acknowledging the existence of the architectural barriers on their property and committing to a plan for the removal of such barriers within twenty days, Plaintiff would file suit. The Defendants ignored the request to sign the certificate but constructed a permanent wheelchair ramp at the rear entrance of the Hunt "N" Shack in January 2009. A parking space next to the ramp is now identified as handicapped parking, and a sign in the front window of the store alerts customers to the availability of the handicapped space in the rear lot.

After the Defendants made the aforementioned improvements, Plaintiff retained Michael Chenail, a consultant with a firm that specializes in ADA accessibility compliance, to assess any architectural barriers at the Hunt "N" Shack and recommend technically feasible barrier removal steps. Chenail visited the Hunt "N" Shack sometime after the Defendants constructed the

presented in the materials before the Court, this matter will be decided on the briefs.

permanent wheelchair ramp at the rear of the store and identified several remaining architectural barriers to access on the property. Despite Chenail's conclusions, the Defendants argue that the Hunt "N" Shack is ADA-compliant as a matter of law because the improvements constructed since January 2009 were "the most feasible and least expensive removal of any architectural barriers to handicapped access."

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999). The nonmoving party, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In addition, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v.*

– 3 –

*Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

Title III of the ADA prescribes, as a general rule, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-677 (2001). Entities covered by Title III "must remove architectural and structural barriers, or if barrier removal is not readily achievable, must ensure equal access for the disabled through alternative methods." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129 (2005) (citing 42 U.S.C. §§ 12182(b)(2)(A)(iv)-(v), 1284(b)(2)(C)). The term "readily achievable" is defined by the ADA as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The factors that should be considered in determining whether an action is readily achievable include:

> (A) the nature and cost of the action needed under [the ADA];
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> (C) the overall financial resources of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.*

The Defendants argue that summary judgment should be entered in their favor because

– 4 –

the construction of a handicap access ramp from the front parking lot to the Hunt "N" Shack is not "readily achievable," and the recent construction of the ramp in the rear parking lot with an accompanying parking space satisfies the requirements of the ADA as a matter of law. The only evidence offered by the Defendants in support of this argument is the affidavit of Mr. Simms and several photographs of the Hunt "N" Shack building and parking lot.[2] In his affidavit, Mr. Simms claims that the construction of the permanent access ramp at the rear of the Hunt "N" Shack "gave handicapped persons readily achievable ingress and egress to the interior of the building and was the most feasible and least expensive removal of any architectural barriers to handicapped access to the interior of the building."

Contrary to the Defendants' suggestion, Plaintiff never argues that a permanent ramp needs to be constructed from the front parking lot in order for the Hunt "N" Shack to comply with the ADA. Nor does Plaintiff appear to dispute the fact that the construction of the ramp from the rear lot was the most feasible and least expensive construction option. Rather, Plaintiff disputes whether the improvements taken by the Defendants since January 2009 bring the Hunt "N" Shack into compliance with the ADA. In his letter and report, Chenail lists what he believes to be several existing architectural barriers on the Defendants' property, including: (1) the lack of adequate signage at the front of the Hunt "N" Shack to direct patrons to the access ramp located at the rear of the building, (2) the lack of a van-accessible parking space with a hard and appropriately marked surface, (3) the lack of a metal sign by the accessible parking space constructed and mounted in accordance with the Uniform Statewide Building Code, and (4) the lack of an access ramp with a level landing, firm and stable surface at the bottom, and handrails on both sides. Chenail based his conclusions partly on the ADA Accessibility Guidelines, which

---

[2] The Defendants have also submitted a lease agreement with the current tenants of the Hunt "N" Shack and the December 11, 2008 warning letter from Plaintiff's counsel, but these documents are not relevant to the architectural

provide guidance to owners and operators of places of public accommodation as to how to comply with the ADA. *See* 28 C.F.R. § 36.101 *et seq.* The guidelines reiterate the ADA's mandate that architectural barriers in existing facilities be removed "where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. 36.304(a).

In short, the Defendants' Motion for Summary Judgment should be denied because there is a genuine issue of material fact as to whether the improvements constructed at the Hunt "N" Shack as of January 2009 constitute architectural barriers to access under the ADA and whether the removal of those barriers in the manner suggested by Plaintiff would be "readily achievable." The conclusions offered in Chenail's report and letter create a genuine dispute as to each of these issues, and the Defendants have failed to demonstrate that the Hunt "N" Shack complies with the ADA as a matter of law. Accordingly, the Motion for Summary Judgment will be denied in a separate Order to follow.

The Defendants also made an untimely and inappropriate request for attorneys' fees in their Motion for Summary Judgment. Because attorneys' fees, litigation expenses, and costs are only available under the ADA to a *prevailing* party, *see* 42 U.S.C. § 12205, and both of the Defendants' dispositive motions will be denied, the Defendants' request for attorneys' fees should also be denied.[3]

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is so **ORDERED**.

---

barrier question discussed above.

[3] The Defendants are advised that, should they eventually prevail in this litigation, they may file a motion for attorneys' fees, if appropriate under the circumstances. That motion would be passed upon by the presiding U.S. Magistrate Judge as a non-dispositive matter.

Entered this 2nd day of April, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE